## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERTA ECKENRODE, | : |
| | : |
| *Plaintiff*, | : |
| | : Case No.: 3:22-cv-46 |
| v. | : |
| | : |
| EBENSBURG CARE CENTER, LLC d/b/a | : |
| CAMBRIA CARE CENTER, | : COMPLAINT IN CIVIL ACTION |
| | : |
| *Defendant.* | : |

Filed on Behalf of Plaintiff:
Roberta Eckenrode

Counsel of Record for this Party:
**J.P. WARD & ASSOCIATES, LLC**

Joshua P. Ward
Pa. I.D. No. 320347

J.P. Ward & Associates, LLC
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

Telephone:        (412) 545-3015
Fax No.:           (412) 540-3399
E-mail:             jward@jpward.com

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERTA ECKENRODE,** | : |
| *Plaintiff,* | : |
| | : Case No.: |
| v. | : |
| | : |
| **EBENSBURG CARE CENTER, LLC d/b/a** | : |
| **CAMBRIA CARE CENTER,** | : **COMPLAINT IN CIVIL ACTION** |
| *Defendant.* | : |

## COMPLAINT IN CIVIL ACTION

AND NOW, comes Plaintiff, Roberta Eckenrode, by and through the undersigned counsel, J.P Ward & Associates, LLC and, specifically, Joshua P. Ward, Esquire, who files the within Complaint in Civil Action against Defendant, Ebensburg Care Center, LLC d/b/a Cambria Care Center, of which the following is a statement:

### PARTIES

1. Plaintiff, Roberta Eckenrode (hereinafter "Ms. Eckenrode"), is an adult individual who currently resides at 1079 Rear 2nd Street, Nanty-Glo, Pennsylvania 15943.

2. Defendant Ebensburg Care Center, LLC d/b/a Cambria Care Center, (hereinafter "Cambria Care Center"), is a corporation with a principal place of business located at 429 Manor Drive, Ebensburg, Pennsylvania 15931 and a headquarters located at 209 Sigma Drive, Pittsburgh Pennsylvania 15238.

## JURISDICTION AND VENUE

3. Jurisdiction is proper as Ms. Eckenrode brings this lawsuit under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C.§ 2601 *et. seq*.

4. This Court has supplemental jurisdiction over Ms. Eckenrode's state law claims pursuant to 28 U.S.C. § 1367(a).

5. Ms. Eckenrode is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

## PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

6. On or about July 4, 2020, Ms. Eckenrode initiated employment with Cambria Care Center as a Certified Nursing Assistant ("CNA").

7. On or about August 24, 2021, Ms. Eckenrode was forced to take an unpaid two-week leave of absence to quarantine as a result of her husband being life-flighted to UPMC Hospital in Pittsburgh, Pennsylvania due to a COVID-19 induced cardiac arrest.

8. On or about September 6, 2021, Ms. Eckenrode called the Human Resources department and left a voicemail to inform Cambria Care Center of her husband's critical condition in the Intensive Care Unit ("ICU") and her subsequent need for additional time off of work.

9. Further, Ms. Eckenrode explicitly stated her desire to begin the application process for FMLA leave.

10. Ms. Eckenrode returned to work on about September 7, 2021, when she then applied for FMLA leave as a result of her husband's continued stay in the UPMC Pittsburgh ICU.

11. At this time, Ms. Eckenrode was still awaiting a response from Human Resources regarding her September 6th voicemail.

12. Due to a lack of response, on or about September 8, 2021, Ms. Eckenrode called "staffing" at Cambria Care Center.

13. Ms. Eckenrode spoke with "Kim" (hereinafter, "Ms. Kim") in "staffing." Ms. Kim informed Ms. Eckenrode she had attempted to call her but was informed by Human Resources that her phone number was "disconnected."

14. Plaintiff's phone was not disconnected and was available for use at all times relevant.

15. Further, Ms. Kim stated she had gotten in contact with the Human Resources representative she needed to speak with regarding her request for FMLA leave.

16. Thereafter, Ms. Eckenrode contacted the Human Resources representative, who informed her that they had attempted to get in touch with her but found phone number had been disconnected.

17. Ms. Eckenrode had never received a new phone number and her phone line had not been disconnected. Plaintiff's phone was not disconnected and was available for use at all times relevant.

18. Additionally, Human Resources informed Ms. Eckenrode her FMLA paperwork would be ready for pick-up that Friday at the front desk.

19. On or about September 10, 2021, Ms. Eckenrode went to Human Resources to retrieve her FMLA paperwork as instructed. The paperwork was not ready upon her arrival as she had been previously informed but was provided to her approximately 5 minutes later.

20. The following day, on or about September 11, 2021, Ms. Eckenrode visited the office of Dr. Olestein, her husband's primary care physician, to complete the provided FMLA paperwork.

21. Dr. Olestein filled out the paperwork but was unable to provide a date for her return to work due to her husband's continued critical condition and uncertainty around his release.

22. Thereafter, Dr. Olestein faxed the completed paperwork and his contact information to the Human Resources department at Cambria Care Center. Dr. Olestein stated Cambria Care Center was free to contact him with any questions or concerns.

23. As a result of the proper completion and submission of her FMLA paperwork, Ms. Eckenrode began her approved FMLA leave on or about September 11, 2021.

24. Throughout her leave, Ms. Eckenrode received several standard automated calls from the company system requesting all employees to come to work as well as information about "town meetings."

25. Ms. Eckenrode has preserved her cell phone data and confirmed that she received no calls from Cambria Care Center, other than the automated calls listed above.

26. On or about October 19, 2021, Ms. Eckenrode received a letter in the mail to her prior "hold" address that stated she had been terminated on September 21, 2021 due to her alleged failure to complete FMLA paperwork.

27. Plaintiff was on approved FMLA leave until November 30, 2021.

28. Further, the letter stated Cambria Care Center attempted to contact Ms. Eckenrode on several occasions but could not reach her due to the phone number on her file allegedly being "deactivated."

29. Significantly, Ms. Eckenrode had updated her address with Human Resources and never received a new phone number.

30. Again, Plaintiff's phone was never deactivated or disconnected. Plaintiff can establish that Cambria Care Center had her correct number on file, because she was receiving automated calls. Therefore, Ms. Eckenrode's termination was clearly pretextual.

## COUNT I
## FMLA RETALIATION / WRONGFUL TERMINATION

31. Ms. Eckenrode incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

32. In order to prevail on a claim of retaliation under the FMLA, one must prove that: "(1) he invoked her right to FMLA-qualifying leave, (2) he suffered an adverse employment decision, and (3) the adverse action was causally related to his invocation of rights." *Lichtenstein v. U. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012)

33. Ms. Eckenrode is an FMLA-eligible employee under 29 U.S.C.A. §2611(2).

34. Cambria Care Center is an employer pursuant to 29 U.S.C.A. §2611(4).

35. Therefore, Ms. Eckenrode was entitled to leave pursuant to the FMLA.

36. Ms. Eckenrode invoked her right to FMLA-qualifying leave and provided Cambria Care Center with the appropriate paperwork from her husband's physician.

37. Ms. Eckenrode began her FMLA leave on or about September 11, 2021.

38. Ms. Eckenrode's termination, indeed, the ultimate adverse employment action, occurred following Ms. Eckenrode's invocation of her FMLA rights as ordered by her husband's physician due to his critical health status in the ICU.

39. The two main factors relevant with respect to establishing a causal link to satisfy the prima facie case of retaliation under the FMLA are: (1) timing and/or (2) evidence of ongoing antagonism. *Sabbrese v. Lower's Home Center's Inc.*, 320 F. Supp. 2d 311 (W.D. Pa. 2004).

40. On or about October 19, 2021, Ms. Eckenrode received a termination letter from Cambria Care Center for her alleged failure to complete FMLA paperwork.

41. Ms. Eckenrode did not receive any communications from Cambria Care Center during her leave regarding FMLA paperwork issues. Rather, Ms. Eckenrode only received automated phone calls from Cambria Care Center asking employees to pick up additional shifts and provide information about "town meetings."

42. Due to the temporal proximity of the actions taken by Cambria Care Center, there is more than an inference, and in fact a direct causal relationship between the termination of Ms. Eckenrode's employment and her invocation of her FMLA rights.

WHEREFORE Plaintiff, Ms. Eckenrode, respects that this Honorable Court consider the above and grant relief in her favor. Specifically, Ms. Eckenrode requests that this Court award back pay, front pay, any other compensatory damages and liquidated damages as calculated by the Court, and costs reasonable attorney's fees and any other relief as this Court sees fit.

## COUNT II
## FMLA INTERFERENCE

43. Ms. Eckenrode incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

44. The FMLA provides in pertinent part, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" these rights, violation of which is known as FMLA retaliation. *Lichtenstein v. U. of Pittsburgh Med. Ctr.*, 691 F.3d 294, at 307 (3d Cir. 2012) (citing to 29 U.S.C. § 2615(a)(1)).

Case 3:22-cv-00046-SLH   Document 1   Filed 03/30/22   Page 8 of 10

45. In order to demonstrate a claim for FMLA interference, a Plaintiff must establish: "(1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA." *Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014) (citing to *Johnson v. Cmty. Coll. of Allegheny Cnty.*, 566 F.Supp.2d 405, 446 (W.D. Pa. 2008); see also, *Sommer v. The Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006)).

46. Moreover, an employee does not need to prove that invoking FMLA rights was the sole or most important factor upon which the employer acted." *Lichtenstein v. U. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301 (3rd Cir. 2012).

47. Under this regulatory interpretation, employers are barred from considering an employee's FMLA leave "as a negative factor in employment actions such as hiring, promotions, or disciplinary actions." *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005).

48. Ms. Eckenrode was employed for a qualified employer under the FMLA and was therefore entitled to leave pursuant to the FMLA.

49. Ms. Eckenrode acknowledged and exercised her FMLA rights when she supplied Cambria Care Center with the company provided FMLA paperwork completed by her husband's physician.

50. Although not a formalistic standard to invoke rights under the FMLA, employees must give their employer "adequate notice", and in doing so the employee "need not expressly assert rights under the FMLA, or even mention the FMLA." *Lichtenstein v. U. of Pittsburgh Med. Ctr.*, 691 F.3d 294, at 303 (3d Cir. 2012) (interpreting the language of 29 U.S.C. § 2612(e)(2) and  29 C.F.R. § 825.303(b)).

51.     Following her submission of the appropriate FMLA paperwork, Ms. Eckenrode began her FMLA leave on or about September 11, 2021.

52.     Rather than allow Ms. Eckenrode to remain on FMLA leave, on or about October 19, 2021, Ms. Eckenrode received a termination letter in the mail stating she had been terminated on September 21, 2021 as a result of her alleged failure to complete FMLA paperwork.

53.     Ms. Eckenrode did not receive any communications from Cambria Care Center during her leave regarding FMLA paperwork issues. Rather, Ms. Eckenrode only received automated phone calls from Cambria Care Center asking employees to pick up additional shifts and provide information about "town meetings."

54.     Between the attempted invocation of her FMLA rights and the adverse employment decision, Ms. Eckenrode's employer actively interfered with her right to take FMLA leave in direct violation of 29 U.S.C. § 2615(a)(1).

55.     Cambria Care Center violated Ms. Eckenrode's rights by interfering with and/or restraining the exercise of Ms. Eckenrode's FMLA leave in direct violation of 29 U.S.C. § 2615(a)(1).

WHEREFORE Plaintiff, Ms. Eckenrode, respects that this Honorable Court consider the above and grant relief in her favor. Specifically, Ms. Eckenrode requests that this Court award back pay, front pay, any other compensatory damages and liquidated damages as calculated by the Court, and costs reasonable attorney's fees and any other relief as this Court sees fit.

**JURY TRIAL DEMANDED.**

          Respectfully Submitted,

        **J.P. WARD & ASSOCIATES, LLC**

Date: March 30, 2022       By: _____
               Joshua P. Ward (Pa. I.D. No. 320347)

               J.P. Ward & Associates, LLC
               The Rubicon Building
               201 South Highland Avenue
               Suite 201
               Pittsburgh, PA 15206

               Counsel for Plaintiff